UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 5:25-cv-02814-KES                                      Date: January 15, 2026

Title: TIGRAN BEDROSIAN v. KRISTI NOEM, et al.

___

PRESENT:

<u>THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE</u>

| K. Hopkins for | |
|---|---|
| Jazmin Dorado | Not Present |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER: | ATTORNEYS PRESENT FOR RESPONDENTS: |
|---|---|
| None Present | None Present |

___

**PROCEEDINGS (IN CHAMBERS):**   Order GRANTING Motion for Preliminary Injunction (Dkt. 28)

Tigran Bedrosian ("Bedrosian") was detained by ICE at a routine check-in on October 3, 2025. He moves for a preliminary injunction to release him from ICE custody under the order of supervision ("OSUP") to which he was previously subject. The motion is **granted** because immigration officials violated due process and their own regulations by giving him insufficient notice and an opportunity to be heard regarding the reasons for his OSUP revocation and detention.

I.   **PROCEDURAL HISTORY**

   A.   <u>Claims Raised in the Petition.</u>

On October 23, 2025, Bedrosian filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241. ("Petition" at Dkt. 1.) The Petition alleged that Bedrosian was detained at a routine ICE check-in without being given any paperwork or being informed why his OSUP was revoked. (<u>Id.</u> at 2.)[1] The Petition raises three grounds for relief:

<u>Ground One</u>: Respondents violated Bedrosian's rights under the Fifth Amendment Due

___

[1] When citing to filings on the docket, this order uses the page numbers imposed by the Court's e-filing system, which appear in blue in the header of filed documents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                    Date: January 15, 2026
                                                                              Page 2

Process Clause because (a) he "did not violate a term of supervision"; (b) "he was not informed whether he would be removed to a third country" or "that ICE had secured a travel document for him"; (c) "he was given no paperwork discussing the reasons for the [OSUP] revocation"; and (d) "he was not interviewed about why he should not be detained." (Pet. at 6.)

Ground Two: Respondents violated the Administrative Procedures Act ("APA") by failing to comply with 8 C.F.R. §§ 241.4(*l*) and 241.13(i), based on the same facts alleged in Ground One. (Pet. at 6.)

Ground Three: Petitioner "fears that he will be removed to a third country without notice or an opportunity to challenge the removal," because the Department of Homeland Security ("DHS") "has taken the position that it will not provide notice or an opportunity to challenge the removal to a third country in certain instances." (Pet. at 6.) Petitioner argues this would violate the Fifth Amendment's Due Process Clause, 8 U.S.C. § 1231, and 8 C.F.R. § 1208.17(b)(2). (Id.)

The Petition seeks "immediate release from ICE custody and that [Petitioner] no longer be re-detained unless ICE complies with the constitution and its regulations." (Id. at 7.) It also seeks "an order enjoining ICE from removing him to a third country without providing him an opportunity to challenge the removal hearing through a Reasonable Fear Interview." (Id.)

**B.     Application for Temporary Restraining Order ("TRO").**

On November 4, 2025, Bedrosian applied for a TRO. (Dkt. 6.) The application was supported by a declaration from Bedrosian (Dkt. 6-1 at 3), a declaration from his counsel Douglas Jalaie (Dkt. 6-1 at 15-19), and other attached exhibits (id. at 9-14, 20-33). Respondents opposed the application on November 6, 2025 (Dkt. 8), attaching a declaration from Deportation Officer Lourdes Palacios. (Dkt. 8-1.) Bedrosian filed a reply supporting the TRO application on November 7, 2025. (Dkt. 9.)

On November 12, 2025, the Court[2] held a hearing on the TRO application and denied it for reasons stated on the record at the hearing. (Dkt. 11.)

**C.     Discovery and Present Motion for Preliminary Injunction.**

Bedrosian moved for leave to conduct discovery, attaching 18 proposed requests for production of documents ("RFPs"). (Dkt. 17.) On December 19, 2025, after Respondents failed to file any substantive opposition,[3] the Court granted the motion and directed Respondents to

---

    [2] The TRO was denied by District Judge Hwang. (Dkt. 11.) The parties later consented to the jurisdiction of the Magistrate Judge. (Dkt. 20, 23, 26.)
    [3] On December 11, 2025, the Court held a telephonic status conference with the parties and ordered Respondents to file a response to the motion by December 16, 2025. (Dkt. 18.) On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES							Date: January 15, 2026
										Page 3

respond to the RFPs within 30 days.  (Dkt. 27.)

On January 3, 2026, Bedrosian filed the present motion for preliminary injunction.  (Dkt. 28 ("Motion").)  The Motion states that Respondents have now produced additional evidence in the form of a declaration from Deportation Officer Catherine Mondragon, which Bedrosian attaches to the Motion.  (Mondragon Decl. / Dkt. 28-1.)  The Motion states Respondents have not responded to the RFPs.

Respondents timely filed an opposition to the Motion (Dkt. 30 ("Opp'n")), which attaches the same declaration from Officer Mondragon (Dkt. 30-1), as well as a new declaration from Deportation Officer Cane Langill (Dkt. 30-2).  Bedrosian filed a reply.  (Dkt. 31 ("Reply").)  Accordingly, the Motion is now ripe for adjudication.[4]

## II.     LEGAL STANDARD

A court may grant a preliminary injunction to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  It is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

To obtain such relief, the movant must establish four elements: (1) a likelihood of success on the merits, (2) the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) the public interest favors an injunction.  Winter, 555 U.S. at 20.

"'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the [movant] can support issuance of a preliminary injunction, so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011); see also id. at 1134 (noting that the Ninth Circuit's "serious questions" approach survived Winter when applied as part of the four-element Winter test).

## III.    EVIDENCE IN THE RECORD

### A.     Final Order of Removal (2012).

Bedrosian was born in Baku, Azerbaijan in 1984.  (Bedrosian Decl. ¶ 1 / Dkt. 6-1 at 3.)

---

that date, Respondents filed a "Notice of Conferring Between the Parties" which stated that the parties were "attempting to resolve the issues."  (Dkt. 21.)

[4] The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES　　　　　　　　　　　　　　　　　　　　Date: January 15, 2026
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

He and his mother are ethnic Armenians. (Bedrosian Decl. ¶ 1 / Dkt. 6-1 at 3.) When he was around 11 years old, they immigrated to the United States due to war in Azerbaijan. (Bedrosian Decl. ¶ 1 / Dkt. 6-1 at 3.) They "were granted protection by the United States and have lived in Los Angeles ever since." (Bedrosian Decl. ¶ 1 / Dkt. 6-1 at 3.)

　　　　In 2009, he was convicted of at least one felony in state court and sentenced to 6 years in state prison. (Bedrosian Decl. ¶ 3 / Dkt. 6-1 at 4; Palacios Decl. ¶ 6 / Dkt. 8-1 at 1.)[5] After serving his sentence, he was taken into ICE custody and ordered removed to Azerbaijan in 2012. (Bedrosian Decl. ¶¶ 3-4 / Dkt. 6-1 at 4; Palacios Decl. ¶ 7 / Dkt. 8-1 at 1); see also Department of Justice, Executive Office for Immigration Review, Automated Case Information https://acis.eoir.justice.gov/en/ (last accessed Jan. 15, 2026).

### B.　　Release on Order of Supervision (2012-2025).

　　　　Bedrosian was detained "for about 90 days because the ICE officers tried to obtain travel documents for [his] removal to Azerbaijan and they were unsuccessful. After 90 days, [he] was released on" an OSUP. (Bedrosian Decl. ¶ 4 / Dkt. 6-1 at 4.)

　　　　Bedrosian declares that, between his release from ICE custody in or around 2012 and April 2025, he continued reporting to ICE "every three months to a year." (Bedrosian Decl. ¶ 5 / Dkt 6-1 at 4.) He admits that "on some occasions," he was late for his ICE check-ins "by a few days" and that he was arrested several times by California authorities, with the most recent arrest occurring more than 8 years ago. (Bedrosian Decl. ¶ 5 / Dkt. 6-1 at 4-5.) However, he asserts that "[i]n all cases, [he] reported to ICE afterward, and "they confirmed [he] was not in violation of supervision" and did not take him into ICE custody. (Bedrosian Decl. at ¶ 5 / Dkt. 6-1 at 4-5.)

　　　　Officer Mondragon declares, "On or about June 28, 2023, Bedrosian reported in person to the non-detained unit. He was given a future date of December 14, 2023 to report in person. … There is no evidence that Bedrosian reported in person to the non-detained unit on December 14, 2023. … The next time Bedrosian reported in person to the non-detained unit was on or about May 7, 2025." (Mondragon Decl. ¶¶ 6-7 / Dkt. 28-1 at 3.) It appears to be undisputed that Bedrosian was *not* detained by ICE when he checked in on May 7, 2025.

---

[5] The parties disagree about the crimes of which Bedrosian was convicted. Officer Palacios asserts that he was convicted of rape by use of drugs under California Penal Code § 261(A)(3) and assault to commit rape under California Penal Code § 220. (Palacios Decl. ¶ 6 / Dkt. 8-1 at 1.) Bedrosian asserts he was convicted of attempted rape and acquitted of kidnapping. (Bedrosian Decl. ¶ 3 / Dkt. 6-1 at 4.) Neither party attaches any of the underlying criminal records nor provides a case number that would allow the Court to check the relevant public records. Regardless, this dispute of fact is immaterial to the instant Motion. It is undisputed that Bedrosian is subject to a final order of removal, apparently based on these convictions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES								Date: January 15, 2026
											Page 5

Bedrosian declares that, in April 2025, "after the new REAL ID [Act] airport requirements," ICE began requiring him to report more often, every two months. (Bedrosian Decl. ¶ 7 / Dkt. 6-1 at 5.)

Bedrosian declares that, at a check-in on September 8, 2025, officers fitted Bedrosian with an ankle monitor and told him to return on October 3, 2025 "for removal of the device." (Bedrosian Decl. ¶ 7 / Dkt. 6-1 at 5.) He further declares that, at this same appointment, he was issued a new OSUP. (Bedrosian Decl. ¶ 7 / Dkt. 6-1 at 5.) He attached a copy of that OSUP to his TRO motion. (TRO Ex. 5 / Dkt. 6-1 at 24-26 (OSUP dated Sept. 8, 2025).)

Officer Mondragon, in contrast, declares, "On or about April 10, 2012, Bedrosian was released on an [OSUP] and he has remained subject to this 2012 [OSUP] until it was revoked on or about October 3, 2025." (Mondragon Decl. ¶ 4 / Dkt. 28-1 at 3.) Respondents have not filed a copy of the 2012 OSUP.

As of October 2025, Bedrosian lived with his wife and four minor children, who ranged between seven months and eight years old. (Bedrosian Decl. ¶ 6 / Dkt. 6-1 at 5.) He and his wife operated Gevs Recovery Center, a rehabilitation facility in Northridge California, and owned two rental properties in Los Angeles. (Bedrosian Decl. ¶ 6 / Dkt. 6-1 at 5.) They financially supported his elderly mother, who is a U.S. citizen and lived near them. (Bedrosian Decl. ¶ 6 / Dkt. 6-1 at 5.)

C.     **Revocation of OSUP and Re-Detention by ICE (October 3, 2025).**

On October 3, 2025, Bedrosian reported to ICE for his next check-in and was detained. (Bedrosian Decl. ¶¶ 8-9 / Dkt. 6-1 at 5; Palacios Decl. ¶ 8 / Dkt. 8-1 at 1.)

Bedrosian declares that, at the check-in, "An officer asked whether [he] had any open criminal cases; [he] said no, and explained that [his] last case was in 2017." (Bedrosian Decl. ¶ 8 / Dkt. 6-1 at 5.) He declares, "I was given no paperwork explaining why I was being detained. I was not interviewed by an officer about why I was being detained." (Bedrosian Decl. ¶ 8 / Dkt. 6-1 at 5.) He admits that the officer "presented forms for [him] to sign," but he claims the officer said that "they were only to verify my fingerprints and photo." (Bedrosian Decl. ¶ 8 / Dkt. 6-1 at 5.)

According to Officer Palacios, Bedrosian was served with a Notice of Revocation of Release on the day of his detention, and on the same date, "an informal interview was conducted in which Bedrosian had an opportunity to respond to the reasons for revocation of his" OSUP. (Palacious Decl. ¶¶ 9-10 / Dkt. 8-1 at 1-2.) This is based on Officer Palacios's review of ICE records, not her personal knowledge, because Officer Palacios was not present when the notice was allegedly served on Bedrosian.

Officer Palacios' declaration attaches a Notice of Revocation of Release dated October 3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES  Date: January 15, 2026
Page 6

2025, which states in relevant part as follows:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of the U. S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case.
>
> *On October 8, 2009, you were convicted in California Superior Court, Pasadena for Assault to Commit Rape (220 PC) and RAPE: Victim Drugged (261 (A) (3) PC). You were sentenced to 6 years in person.*
>
> *You have failed to comply with reporting to ERO LOS for your check-ins. This is in clear violation of your order of supervision status.*
>
> Based on the above and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely.

(Palacios Decl. Ex. A / Dkt. 8-1 at 6.)

A proof of service attached to the notice states that Officer C. Mondragon served a copy of the notice on Bedrosian at "ICE ERO/Los Angeles" on October 3, 2025 at 1:00 p.m. (Palacios Decl. Ex A / Dkt. 8-1 at 5.) The proof of service also states that a copy was served on Supervisory Detention Deportation Officer E. Vega on the same date. (Id.)

According to an Alien Informal Interview form attached to Officer Palacios's declaration, ICE Officer C. Mondragon interviewed Bedrosian on the same day, October 3, 2025. (Palacios Decl. Ex. A / Dkt. 8-1 at 7.) However, the form is incomplete and is not signed; on the line marked "Signature of Interviewing Officer," someone wrote, "refuse to sign." (Id.)

As noted above, Respondents have now provided a declaration from Officer Mondragon in response to the Court's order authorizing discovery. (Dkt. 30-1.) That declaration says nothing about Officer Mondragon's actions on October 3, 2025, the day Bedrosian was detained. It does not state whether she served Bedrosian with the Notice of Revocation or conducted an informal interview with him about the reasons for the OSUP revocation. Instead, it explains why ICE believes that Bedrosian absconded between December 14, 2023 and May 7, 2025 (as discussed above).

Bedrosian remains in ICE custody at the Adelanto Detention Center. (Bedrosian Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                                    Date: January 15, 2026
                                                                                              Page 7

¶¶ 8-10 / Dkt. 6-1 at 5-6; Palacious Decl. ¶ 8 / Dkt. 8-1 at 1.)[6]

### D. The Government's Attempts to Remove Bedrosian to Azerbaijan After He Was Detained.

There is no evidence in the record about what steps DHS took, if any, to remove Bedrosian to Azerbaijan *before* he was re-detained on October 3, 2025.

About a week later, "on or about October 9, 2025, ICE completed and sent a travel document request for Bedrosian to the Consulate General of Azerbaijan." (Palacios Decl. ¶¶ 11-12 / Dkt. 8-1 at 2.)

Officer Palacios declares, "In my recent experience, ICE has been able to successfully remove Azerbaijani nationals to Azerbaijan on commercial and charter flights. The government of Azerbaijan has been issuing travel documents for its nationals. In my experience, the issuance of travel documents from the government of Azerbaijan has been taking two to three months." (Palacios Decl. ¶ 13 / Dkt. 8-1 at 2.)

"On or about November 21, 2025, the Azerbaijan Consulate informed ICE that it declined to issue travel document[s] at this time because the Consulate determined the birth certificate submitted in support of the travel application contained irregularities and was likely a forgery or contained fraudulent information." (Langill Decl. ¶ 6 / Dkt. 30-2 at 1.)

As of December 19, 2026, ICE planned to "re-interview Bedrosian to identify if he has any additional foreign identity documents in his possession, custody, or control and if he has or had legal status in any other country, including Russia." (Langill Decl. ¶ 7 / Dkt. 30-2 at 1.)

## IV. DISCUSSION

### A. Likelihood of Success on the Merits.

The Court finds Bedrosian is likely to succeed on the merits of his claim that he was not given meaningful notice of the reasons his OSUP was being revoked or a meaningful opportunity to respond.[7]

---

[6] Bedrosian declares that, after he was detained, "I was held in the basement of the ICE office at 300 N. Los Angeles Street for two days. The room was about 20 feet by 20 feet and held about 80 detainees. There were no beds or blankets, and people slept in shifts on the floor. There was one toilet in the open, no privacy, no toiletries, and we received one bottle of water and one burrito per day. … After two days, I was transferred to Santa Ana for one night, then returned to the Los Angeles building for another night, and finally transferred to the Adelanto Detention Center, where I remain detained." (Bedrosian Decl. ¶¶ 9-10 / Dkt. 6-1 at 5-6.)

[7] Bedrosian's current Motion also argues that "Respondents failed to prove a designated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                                                Date: January 15, 2026
                                                                                                            Page 8

### 1.  Both the Due Process Clause and ICE regulations required that Bedrosian be given written notice of the reasons his OSUP was revoked and an interview to challenge those reasons.

Bedrosian argues that he was given insufficient notice of the reasons why his OSUP was revoked and no opportunity to dispute those reasons, which violated both his constitutional right to due process and DHS's own regulations.  (Pet. at 6 (Grounds One and Two); Mot. at 14-17.)  Respondents argue, "The government's regulatory authority to re-detain individuals previously released by ICE is discretionary, and it does not require the type of intensive threshold evidentiary procedure that [Bedrosian] suggests."  (Opp'n at 3.)  They argue that the "central limitation" on the government's ability to detain noncitizens who have been ordered removed is "the total time of detention after the removal order become[s] final" under Zadvydas v. Davis, 533 U.S. 678 (2001).  (Opp'n at 4.)  They contend that Bedrosian's detention is proper because his removal is still reasonably foreseeable under the Zadvydas standard.  (Opp'n at 4-5.)

To the extent Respondents are arguing Zadvydas is the *sole* constitutional limitation on the government's ability to detain a noncitizen subject to a final order of removal, the Court disagrees.  In Zadvydas, the Supreme Court held that detaining a noncitizen indefinitely while the government attempts to remove the noncitizen may in some circumstances violate the Fifth Amendment's Due Process Clause.  533 U.S. at 682, 689-701.  However, nothing in Zadvydas forecloses the claim that the government may violate a noncitizen's due process rights in *other* ways, such as by failing to give them appropriate notice of the reasons their OSUP is being revoked and an opportunity to dispute those reasons.  That is the claim Bedrosian is raising in this case.

Unlike Zadvydas, this case is about ICE's authority to *re-detain* Bedrosian *after* he was released on an OSUP.  Compare Zadvydas, 533 U.S. at 684-85 (noting that the petitioners had been in ICE custody since they were ordered removed).  "Once ICE releases a noncitizen on an OSUP, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'"  Manivong v. Bondi, No. 25-cv-6747-JFW-KES, 2025 WL 3211455, at *5, 2025 U.S. Dist. LEXIS 171812, at *13 (C.D. Cal. Sept. 3, 2025) (quoting Roble v. Bondi, No. 25-cv-3196, 2025 WL 2443453, at *3, 2025 U.S. Dist. LEXIS 164108, at *6 (D. Minn. Aug. 25, 2025)).  Both 8 C.F.R. §§ 241.4 and 241.13 require that the noncitizen be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation *stated in the notification*."  8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3) (emphasis added).  Thus, ICE's own regulations "require that when an alien is notified of a revocation of release, the

---

official revoked the OSUP."  (Mot. at 12-13.)  This ground for relief is not alleged in the Petition.  Because the Court finds that Bedrosian has show a likelihood of success on the merits of his other claims, this order does not reach this issue.  If Bedrosian intends to pursue this claim after his release, he would need to move to amend the underlying Petition.

Case 5:25-cv-02814-KES   Document 32   Filed 01/15/26   Page 9 of 17   Page ID #:248

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                              Date: January 15, 2026
                                                                        Page 9

'reasons' for that revocation must be stated *in the notification*." Nouri v. Herrera, No. 25-cv-1905-JFW-DTB, 2025 U.S. Dist. LEXIS 171809, at *13 (C.D. Cal. Sep. 3, 2025) (emphasis added).

A noncitizen released from custody on an OSUP also has a liberty interest in remaining out of custody that is protected under the Fifth Amendment's Due Process Clause. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025); Momtazian v. Noem, No. 25-cv-03432-AH-KES, 2025 U.S. Dist. LEXIS 266022, at *5-6 (C.D. Cal. Dec. 25, 2025); Hoang v. Santa Cruz, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *4, 2025 U.S. Dist. LEXIS 212737, at *7-8 (C.D. Cal. Oct. 28, 2025); Calderon v. Kaiser, No. 25-cv-06695, 2025 WL 2430609, at *2, 2025 U.S. Dist. LEXIS 163975, at *5 (N.D. Cal. Aug. 22, 2025) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).

The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). ICE's failure to follow its own regulations, which are designed to provide a noncitizen with notice and an opportunity to be heard, violates due process. See McSweeney v. Warden of Otay Mesa Det. Facility, No. 25-cv-02488, 2025 WL 2998376, at *7, 2025 U.S. Dist. LEXIS 210271, at *19-20 (S.D. Cal. Oct. 24, 2025) ("Both § 241.4 and § 241.13 were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.' … ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release."); Diaz v. Wofford, No. 25-cv-01079, 2025 WL 2581575, at *7, 2025 U.S. Dist. LEXIS 173666, at *18-19 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation.").[8]

---

[8] Some courts have held that due process requires that a noncitizen be given a pre-detention hearing before a neutral decision maker prior to their OSUP being revoked. See, e.g., Zakzouk v. Becerra, No. 25-cv-06254, 2025 WL 2899220, at *5, 2025 U.S. Dist. LEXIS 201666, at *13-14 (N.D. Cal. Oct. 10, 2025) ("Courts in this district have repeatedly found that the Mathews factors support Petitioner's constitutional right to a hearing before a neutral decisionmaker prior to any future detention."); Momtazian v. Noem, No. 25-cv-03432-AH-KES, 2025 U.S. Dist. LEXIS 266022, at *6 (C.D. Cal. Dec. 25, 2025) ("There is also a risk that Petitioner will be erroneously deprived of his liberty interest absent a pre-deprivation hearing before a neutral arbiter."). Because Bedrosian does not ask for this relief in the current Motion, and because the record here does not demonstrate that Respondents complied even with ICE's own regulations (which require less), this Order does not reach that issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES								Date: January 15, 2026
											Page 10

**2.	Under Respondents' own regulations, they may only re-detain Bedrosian based on a violation of the terms of his OSUP or a finding that changed circumstances have given rise to a significant likelihood that he may be removed in the reasonably foreseeable future.**

Respondents cite Rodriguez v. Hayes, 591 F.3d 1105 (9th Cir. 2010), for the proposition that 8 C.F.R. § 241.14 "provides the detainee some opportunity to respond to the reasons of revocation" but "provides no other procedural and no meaningful substantive limit on [the] exercise of [ICE's] discretion as it allows revocation 'when, in the opinion of the revoking official … [t]he purposes of release have been served … [or] [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." (Opp'n at 29-30 (quoting Rodriguez, 591 F.3d at 1117).)  Even assuming this dicta remains good law—see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1119-1201 (9th Cir. 2022) (discussing how Ninth Circuit case law, including Rodriguez, was subsequently "upended" by the Supreme Court)—this opinion was describing the provisions of 8 C.F.R. § 241.4.  As one court has summarized:

> [T]he government has promulgated two regulations to govern orders of supervision.  ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  8 C.F.R. § 241.4(l)(2).  …
>
> Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal.  Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001).  ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances ... there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2). … Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under ***more limited circumstances*** than 8 C.F.R. § 241.4(*l*)….

Hoang, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *8-9 (emphasis added).

The record in this case indicates that Bedrosian is subject to 8 C.F.R. § 241.13.  (See Palacios Decl. Ex. A / Dkt. 8-1 at 4 (Notice of Revocation of Release, stating, "Based on the above and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time."); Bedrosian Decl. ¶ 4 / Dkt. 6-1 at 4 ("After my removal, I was [detained] for about 90 days because the ICE officers tried to obtain travel documents for my removal to Azerbaijan and they were unsuccessful.  After 90 days, I was released on supervision.")); see generally Zadvydas,

Case 5:25-cv-02814-KES    Document 32    Filed 01/15/26    Page 11 of 17    Page ID #:250

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02814-KES                                                                            Date: January 15, 2026
                                                                                                                              Page 11

533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody.").

Accordingly, Respondents may not re-detain Bedrosian based on the broad criteria listed in 8 C.F.R. § 241.4(*l*)(2).

### 3.   Bedrosian has submitted evidence supporting his claim that the notice was not served on him and that he was not given an interview.

Bedrosian has filed a sworn declaration stating that he "was given no paperwork explaining why [he] was detained" and "was not interviewed by an officer about why [he] was being detained." (Bedrosian Decl. ¶ 8 / Dkt. 6-1 at 5.) He declares that an officer "presented forms for [him] to sign," but told him the forms "were only to verify [his] fingerprints and photo." (Id.)

Notably, neither the Notice of Revocation of Release nor Alien Informal Interview form that Respondents have produced are signed by Bedrosian. (Palacious Decl. Exs. A-B / Dkt. 8-1 at 4-5, 7.) His admission that he signed some forms therefore does not support Respondents' contention that the notice was served on him or that an interview was conducted.

Although Officer Palacios declares that the notice was served on Bedrosian and that an interview took place (Palacios Decl. ¶¶ 9-10 / Dkt. 8-1 at 1-2), her declaration does not explain how she has personal knowledge of this fact. There is no evidence that she was present on October 3, 2025, when Bedrosian was detained. Her declaration generally states, "The facts in this declaration are based on my personal and professional knowledge, consultation with other ICE personnel, and review of official documents and records maintained by DHS and other relevant sources obtained during the regular course of business." (Palacios Decl. ¶ 2 / Dkt. 8-1 at 1.) Because she does not reference any specific documents except for the Notice of Revocation and Alien Informal Interview form themselves, she appears to be assuming they were served on Bedrosian because they are in ICE's files.

When given the opportunity to submit a declaration from Officer Mondragon—the officer who, according to the forms, was present when Bedrosian was detained on October 3, 2025—Officer Mondragon did not say anything about whether she served Bedrosian with the notice or conducted an interview. (Mondragon Decl. / Dkt. 30-1.)

On this record, Bedrosian is likely to prevail on his claim that he was neither served with the notice of revocation nor given an informal interview about the reasons for the revocation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                                     Date: January 15, 2026
                                                                                                    Page 12

### 4. Even if the notice was served on Bedrosian and he was given an informal interview, the procedures were still insufficient.

Even if the notice was served on Bedrosian, he is likely to prevail on his claim that the written notice failed to give him sufficient notice of the reasons for the revocation and therefore rendered any informal interview meaningless.

There are two reasons for revocation listed in the notice: (1) the 2009 convictions that caused the immigration court to order Bedrosian's removal from the United States, and (2) Bedrosian's alleged failure to check in with ICE on unspecified dates. (Palacios Decl. Ex. A / Dkt. 8-1 at 4.)

Convictions that occurred years before Bedrosian was ever placed on an OSUP—and of which ICE was aware when it issued the OSUP, because they were the grounds for Bedrosian's removal order—are not a valid basis for revoking the OSUP. (Mondragon Decl. ¶ 4 / Dkt. 30-1 at 1 (stating Bedrosian was subject to an OSUP issued in 2012)); see, e.g., Delkash v. Noem, No. 25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5, 2025 U.S. Dist. LEXIS 194376, at *13 (C.D. Cal. Aug. 28, 2025) ("The government states in its Opposition that Delkash 'knows exactly why he was ordered removed—his criminal activities ....' … But Delkash's removal was ordered then withheld 24 years ago; the government cannot conflate the reason for removal with the reason for revocation of release.").

As to Bedrosian's alleged failure to check in with ICE, the lack of any specific dates made it impossible for Bedrosian to respond in any meaningful way. See, e.g., Hashemi v. Noem, --- F. Supp. 3d ----, No. 25-cv-10335-HDV-SR, 2025 WL 3468694, at *5, 2025 U.S. Dist. LEXIS 250316, at *15 (C.D. Cal. Nov. 19, 2025) ("This Court is not requiring that a notice of revocation include any particular magic words; but it must provide real, specific, concrete information that a noncitizen could actually respond to. … [B]ecause Petitioner was not given the reasons for revocation, he could not have meaningfully responded to them at this alleged informal interview.").

Although Respondents now clarify that they are contending Bedrosian failed to report on December 14, 2023 and absconded for about a year and a half between December 14, 2023 and May 7, 2025 (see Mondragon Decl. ¶¶ 5-7 / Dkt. 30-1 at 1), this clarification does not cure the failure to inform Bedrosian of these key facts at the time of his detention.

Requiring ICE to follow these procedures "is not mere puffery, a gesture that is irrelevant so long as the result is correct. … After all, without due process, there is no way to tell whether the result is in fact correct." Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 157, 144 (W.D.N.Y. 2025). In the present case, for example, it is far from clear that Bedrosian did, in fact, abscond between December 14, 2023 and May 7, 2025. Officer Mondragon simply declares that "[t]here is no evidence" in ICE's files that Bedrosian "reported in person to the non-detained unit on December 14, 2023." (Mondragon Decl. ¶ 6 / Dkt. 30-1 at 1.) Respondents make no attempt to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                                      Date: January 15, 2026
                                                                                Page 13

explain why, if Bedrosian had absconded for a such a significant period of time, he (a) began to voluntarily report again, and (b) was not re-detained by ICE when he began to do so.  Bedrosian, in contrast, describes an internally consistent history of check-ins and OSUPs that is supported by at least some documentation.  (See Bedrosian Decl. ¶¶ 5, 7 / Dkt. 6-1 at 4-5; Pet. Ex. 5 / Dkt. 6-1 at 24 (OSUP dated Sept. 8, 2025).)  If Bedrosian had been given meaningful notice and an opportunity to respond to the allegation that he had failed to check-in on certain dates, he may have been able to rebut that allegation and convince immigration officials that he should not be detained.

Bedrosian is likely to prevail on his claim that, even if the written notice of revocation was served on him, it was insufficient to give him reasonable notice or an opportunity to be heard regarding the reasons for the revocation.

### 5. Whether Bedrosian's removal is foreseeable does not matter at the present moment, because that was not a ground stated in the notice.

Respondents spend a significant portion of their opposition to the present Motion arguing that Bedrosian's removal "remains reasonably foreseeable." (Opp'n at 4-5.)  As discussed above, the applicable regulations do allow revocation of an OSUP "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2); see also Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.").

To the extent Respondents are arguing that Bedrosian's detention is justified on this basis, this is not a reason stated in the Notice of Revocation.  Because the regulations and due process require a noncitizen to be given written notice of the reasons their OSUP is being revoked, Respondents cannot rely on new, ad hoc reasons for removal that are not stated in the notice served on Bedrosian.  See 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3) (stating the noncitizen is entitled to an informal interview "to respond to the reasons for revocation *stated in the notification*") (emphasis added); Nouri, 2025 U.S. Dist. LEXIS 171809, at *13 ("ICE's regulations require that when an alien is notified of a revocation of release, the 'reasons' for that revocation must be stated in the notification.").

Even if this ground for revocation had been properly presented to Bedrosian, the Court notes that Respondents' evidence on this point is far from convincing.  The most recent update provided by Respondents is that, "[o]n or about November 21, 2025, the Azerbaijan Consulate informed ICE that it declined to issue travel document[s] at this time because the Consulate determined the birth certificate submitted in support of the travel application contained irregularities and was likely a forgery or contained fraudulent information."  (Langill Decl. ¶ 6 / Dkt. 30-2 at 1.)  As of December 19, 2025, ICE planned to "re-interview" Bedrosian "to identify if he has any additional foreign identity documents in his possession, custody, or control and if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES　　　　　　　　　　　　　　　　　　　　　Date: January 15, 2026
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 14

he has or had legal status in any other country, including Russia." (Id. ¶ 7.) Since he immigrated to the United States at age 11, this seems unlikely. At the moment, there is no indication that ICE will be successful in removing Bedrosian to Azerbaijan, Russia, or any other country. Thus, his continued detention likely could not be justified under 8 C.F.R. § 213.13 either.

### 6.　Release is an appropriate remedy.

Respondents argue that, even if Bedrosian "did not receive a copy of the Notice nor provide[] an informal interview, the appropriate remedy … would not be automatic release from custody" because injunctive relief "must be narrowly tailored to the wrong." (Opp'n at 3 (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1214 (9th Cir. 2022).)

Releasing Bedrosian on the OSUP to which he was previously subject is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents improperly revoked that OSUP. See, e.g., Hoang v. Bondi, 25-cv-03177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) ("The proper remedy is therefore Hoang's release from custody, thereby returning Hoang to the status quo before his release was improperly revoked."); Delkash, 2025 WL 2683988, at *5, 2025 U.S. Dist. LEXIS 194376, at *14 ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful.").

### B.　Irreparable Harm.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017) (citation omitted) ("[I]t follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that members of the plaintiff class will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that Plaintiffs have also carried their burden as to irreparable harm."); see also Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

The Ninth Circuit has also recognized "the irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Thus, under Ninth Circuit law, the very fact of Bedrosian's likely unconstitutional

Case 5:25-cv-02814-KES    Document 32    Filed 01/15/26    Page 15 of 17    Page ID #:254

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02814-KES                                                                                   Date: January 15, 2026
                                                                                                                                           Page 15

detention constitutes irreparable harm. Bedrosian has also submitted evidence that he has four minor children and an elderly mother who depend on him and his wife for physical and financial support. (Bedrosian Decl. ¶ 6 / Dkt. 6-1.)

Respondents cite Resendiz v. Holder, No. 12-cv-4850, 2012 WL 5451162, at *5, 2012 U.S. Dist. LEXIS 160553, at *14-15 (N.D. Cal. Nov. 7, 2012) for the proposition that Bedrosian "faces the same alleged irreparable harm as any habeas corpus petitioner in immigration custody," which means "he has not shown extraordinary circumstances warranting the emergency relief requested." (Opp'n at 6.) Resendiz was not ruling on a motion for preliminary injunction; it was considering whether the court should excuse the petitioner from pursuing administrative remedies with the Board of Immigration Appeals before the court considered the request for habeas relief. The two analyses are materially different. Among other things, the Resendiz court had not made a finding that the petitioner was likely to succeed on the merits of the constitutional claim, as this Court finds here. Additionally, other courts have disagreed with Resendiz's reasoning. See, e.g., Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) ("[A]lthough some of the effects of detention on Marroquin Ambriz are 'the same type of harm any person who is detained may suffer, they are [nonetheless] irreparable in nature.' … The Court follows the vast majority of cases that have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") Accordingly, Resendiz is unpersuasive on this point.

The Court finds that Bedrosian has shown irreparable harm justifying the issuance of a preliminary injunction.

### C.   Balance of Equities and Public Interest.

The third and fourth factors, harm to the opposing party and the public interest, "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). Where a constitutional violation is alleged, "a likelihood of succeeding on the merits also tips the public interest sharply in [the petitioner's] favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" Baird, 81 F.4th at 1040 (quoting Riley's Am. Heritage Farms v. Elsasser, 32 F.4th 707, 731 (9th Cir. 2022)). "Moreover, the public has a strong interest in upholding procedural protections against unlawful detention." Ton v. Noem, No. 25-cv-3348-DMG-DSR (C.D. Cal. Dec. 22, 2025), Dkt. 12 at 13.

Respondents argue that "the public interest in enforcement of the United States's immigration laws is significant" and "outweighs [Bedrosian's] private interest here." (Opp'n at 6.) They cite Nken for the proposition that "[t]here is always a public interest in prompt execution of removal orders." 556 U.S. at 436. In that case, however, the noncitizens sought to stay an order of removal. Id. at 425-26, 433-44. Here, in contrast, Bedrosian merely seeks release from his current detention, subject to an OSUP that ICE previously found sufficient to ensure the execution of his removal order. This narrow relief does not significantly inhibit the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02814-KES                                       Date: January 15, 2026
                                                                  Page 16

government's ability to enforce immigration laws, particularly when weighed against the likelihood that ICE violated Bedrosian's constitutional rights and their own regulations when they detained him.

The Court finds that the balance of equities and the public interest favor the issuance of a preliminary injunction.

### D. **Bond.**

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (citation omitted).

## V. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Bedrosian's motion for preliminary injunction (Dkt. 28) is **granted**.

2. Respondents shall immediately release Bedrosian from custody, subject to the conditions of his prior OSUP. Upon his release from custody, Respondents shall provide Bedrosian and his counsel with a copy of the operative OSUP governing his release (whether that be an OSUP issued in 2012 or the OSUP issued on September 8, 2025).

3. Respondents are enjoined from re-detaining Bedrosian unless and until they comply with the requirements 8 C.F.R. §§ 241.4 and 241.13.

4. If Bedrosian is subsequently re-detained, Respondents shall not transfer Bedrosian out of this District during the pendency of these habeas proceedings.

5. Copies of any and all documents served on Bedrosian between October 3, 2025 and the date of his release must be provided to Bedrosian's counsel within **thirty (30) days** of the date of this Order (excluding documents already produced in this case).

6. If Respondents serve Bedrosian with any documents during the pendency of this case—such as requests for documentation in aid of ICE's efforts to obtain a travel document for Azerbaijan, or new notices of revocation—they **must also serve a copy of those documents on Bedrosian's counsel** of record in this case.

7. Within **seven (7) days** of the date of this Order, the parties shall file a joint status report addressing: (a) when Bedrosian was released from custody; (b) whether ICE plans to re-detain Bedrosian in the future and, if so, based on what criteria; (c) what progress ICE has made,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02814-KES          Date: January 15, 2026
                                                                Page 17

if any, in obtaining travel documents from Azerbaijan; (d) whether DHS intends to pursue Bedrosian's removal to a third country; and (e) whether Bedrosian's release from custody moots the underlying Petition.

Initials of Deputy Clerk kh